**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Mark Richards (SBN 321252)
*mrichards@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213 788-4070

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RAY GONZALEZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>    Defendant. | Case No.: 2:24-cv-11234<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>4. FRAUD<br>5. FRAUDULENT INDUCEMENT<br>6. FRAUDULENT CONCEALMENT OR OMISSION<br>7. FRAUDULENT MISREPRESENTATION<br>8. NEGLIGENT MISREPRESENTATION |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



9.  QUASI-CONTRACT / UNJUST ENRICHMENT

**JURY TRIAL DEMAND**

**<u>ACTION SEEKING STATEWIDE</u>**
**<u>AND NATIONWIDE RELIEF</u>**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

1.     Plaintiff Anthony Ray Gonzalez ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described below (the "**Class**" and "**Class Members**"), brings this class action complaint against Defendant Samsung Electronics America, Inc., ("**Defendant**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.     <u>INTRODUCTION</u>

2.     Plaintiff brings this lawsuit on behalf of himself and all similarly situated consumers ("**Class Members**") who purchased the Samsung Galaxy Watch Fluoroelastomer Band, Sport Band (20mm), Sport T-Buckle Band, Rugged Sport Band, Extreme Sport T-Buckle Band, and D-Buckle Hybrid Eco-Leather Band (the "**Products**"). Defendant advertises these Products as designed to support and further human health and wellness, environmentally sustainable, and suitable for everyday use and wear. However, in truth, they contain excessive levels of per- and polyfluoroalkyl substances ("**PFAS**"), which are toxic to human health and the environment.

3.     PFAS chemicals, often called "forever chemicals," have special characteristics that cause extensive environmental contamination. They have also been linked to various serious public health problems, including prostate and kidney cancer, pregnancy complications, and more. PFAS do not readily break down in the environment or even in conventional treatment systems. These features make them difficult and expensive to remove.[1] Despite these known dangers to human health and the environment, manufacturers use PFAS due to their low cost and wide availability. Alternatives exist, however, and responsible companies use them. For example,

---

[1] Alison L. Ling, *Estimated scale of costs to remove PFAS from the environment at current emission rates*. Science of The Total Environment (March 25, 2024), https://doi.org/10.1016/j.scitotenv.2024.170647. (Last visited December 31, 2024).

CLASS ACTION COMPLAINT

smartwatch bands made of silicone are flexible, water-resistant, and durable, but lack the harmful effects of bands containing toxic PFAS.

4.     A leading reason consumers purchase smartwatches is to monitor and improve their health on a daily basis. These health-conscious consumers reasonably seek smartwatches that are safe for everyday use and to further their health overall. Environmental sustainability is also a top consideration. Aware of these material purchase drivers, Defendant purposely implemented a pervasive and widespread marketing campaign across all media channels for the Products, focusing on health, well-being, and environmental sustainability, even inviting all consumers to "start their wellness journey" with its smartwatches and Products. Consumers thus purchase the Products with consideration toward, and reasonably expect quality, safety, and sustainability to further and protect their own health while minimizing environmental impact, consistent with Defendant's promises and overall branding. These promises are especially important to the consumers that Defendant targets, when one considers that the primary reported use of smartwatches is to track and further fitness and health, and because they are often worn for over 12 hours per day, and even throughout the night, as directed and intended by Defendant. Given these uses, consumers expect the Products to be conducive to human health, safe to wear for prolonged periods of time, and certainly free from dangerous chemicals. These reasonable assumptions are otherwise reinforced by Defendant's purposeful, widespread, and pervasive Product advertising focused on health, wellness, and environmental stewardship. Consumers also reasonably rely on manufacturers to accurately and completely disclose significant and hidden dangers posed by products, especially where, as here, the Product is advertised and sold as designed for, and to further, human health and wellness.

5.     As a global leader in the over 50-billion-dollar smartwatch industry, Defendant profits substantially from consumers who desire safe and sustainable

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

smartwatches to track and further their health and who believe the company's pervasive and false promises surrounding health, wellness, and environmental sustainability. Consistent with Product advertising, Defendant consistently markets itself as a company that "care[s] about [their] customers and employees' health and their environments"[2] that strives to "**minimize any potential adverse effects on the health of [their] customers**."[3] Against this backdrop, the public was reasonably outraged, as widely reported in the press, when it was revealed that Defendant's Products instead contain toxic PFAS chemicals that harm humans and the environment, and at excessive levels. Worse, the presence of excessive PFAS in the Products was and is avoidable, as it was also reported that several bands on the market are made of different materials that do not contain excessive levels of PFAS.[4] Defendant also could have chosen not to expose the health-conscious consumers it targets to the harmful toxins, by using different material for its watchbands, but it elected not to. This not only harms consumers but it also gives Defendant an unfair competitive advantage over those in the market who decline to affirmatively promise health or environmental sustainability, or who deliver on those promises by using the otherwise widely-available materials not containing excessive levels of toxic substances that, here, are absorbed by the skin during daily, all-day long use as intended—and on the undersides of the wrists where the skin absorption rate of toxic chemicals like PFAS is heightened.

6.    **Background.** Per- and polyfluoroalkyl substances ("**PFAS**") are a group of synthetic chemical compounds used to make fluoropolymer coatings that resist heat, oil, stains, grease, and water in a variety of consumer products and

---

[2] *Sustainability in Operations*, SAMSUNG, https://www.samsung.com/global/sustainability/planet/sustainable-operations/ (last accessed Dec. 30, 2024).
[3] *Id.*
[4] *See e.g.*, Google's Pixel Watch Woven Band (made of recycled yarn) or FitBit's Sport Band for (made of silicone).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

manufacturing applications. The same properties that make PFAS excellent at resisting water and stains make them nearly impossible to break down via natural processes in the human body or the environment. PFAS are highly toxic, bioaccumulative, and persistent organic pollutants, and as such are commonly described as "forever chemicals." Since the 1970s, when occupational studies detected PFAS in the blood of certain workers,[5] a growing body of scientific research has proven the severe health consequences they cause. Current peer-reviewed scientific studies demonstrate that PFAS cause negative reproductive effects, negative developmental effects, or delays in children, increased risk of cancers, reduced ability of the body's immune system to fight infections, interference with the body's natural hormones, and increased risk of obesity.[6,7] Even at extremely low exposure levels, PFAS cause serious health effects, including suppression of the immune system, endocrine disruption, accelerated puberty, liver damage, and thyroid changes.[8] They are proven equally harmful to the environment. As a result, as society has increasingly become more health-conscious and concerned for the environment, consumers seek to avoid or reduce unnecessary exposure to toxic chemicals like PFAS, with harm reduction a key goal.

---

[5] *History and Use of Per- and Polyfluoroalkyl Substances (PFAS) Found in the Environment*, INTERSTATE TECHNOLOGY REGULATORY COUNCIL (Sept. 27, 2023), https://pfas-1.itrcweb.org/wp-content/uploads/2023/10/HistoryandUse_PFAS_Fact-Sheet_Sept2023_final.pdf.

[6] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (June 7, 2023), https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas.

[7] Cook, K. *The PFAS and the Furious*, ENVIRONMENTAL WORKING GROUP (Sept. 17, 2020), https://www.ewg.org/research/the-pfas-and-the-furious/.  (Last visited Dec. 31, 2024).

[8] Louisse, J. et al., *Perfluorooctanoic acid (PFOA), perfluorooctane sulfonic acid (PFOS), and perfluorononanoic acid (PFNA) increase triglyceride levels and decrease cholesterogenic gene expression in human HepaRG liver cells*, ARCHIVES OF TOXICOLOGY, 94, 3137–3155 (2020), https://doi.org/10.1007/s00204-020-02808-0. (Last visited June 26, 2024).

4

7.    Despite growing consumer awareness, well-documented harms, and a worldwide movement to remove or reduce toxic PFAS from production materials and processes, Defendant's Products contain PFAS in the Products' fluoroelastomer material (also known as "**FKM**"), at levels that render them an unreasonable safety hazard. The harm is especially pronounced here given that, when the Product is used as intended and directed, the toxic chemicals remain in contact with the skin daily and all day long, including the underside of the wrist where the body's absorption rate of the toxic chemicals is heightened.[9]

8.    By pervasively advertising the watches as designed to further health, wellness, and sustainability, while encouraging daily/nightly use, Defendant misleads Plaintiff and consumers like him, causing them to overpay for Products that do not deliver advertised benefits and to forego safe alternatives available on the market. Defendant therefore enjoys an unfair competitive advantage, receiving millions of dollars from consumers in ill-gotten proceeds while putting the health and welfare of millions of consumers and their families at risk due to the Product's intended daily use and concomitant prolonged absorption of toxic chemicals into the skin. Defendant could have avoided the unreasonable safety and environmental hazard with available manufacturing alternatives, and its failure to do so while continuing to promise consumers health, wellness, and sustainability is unlawful, unfair, and fraudulent under consumer protection laws.

9.    **Challenged Representations and Material Omission.** In an effort to increase profits and gain an unfair advantage over its lawfully acting competitors, Defendant, misleadingly and materially omits, on all relevant marketing and advertising, that the Products contain toxic PFAS (the "**Material Omission**"). Instead, Defendant falsely and misleadingly markets and advertises its Products with

---

[9] Oddný Ragnarsdóttir et. al., *Dermal bioavailability of perfluoroalkyl substances using in vitro 3D human skin equivalent models*, Environmental International (Jun. 2024), https://www.sciencedirect.com/science/article/pii/S0160412024003581 (last accessed Dec. 27, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the widespread and pervasive claims (hereinafter, the "**Challenged Representations**") including:

- "Start your **wellness** journey"[10]

- "Buckle up for **all-day** action"[11]

- "This sporty band will accompany you in your outdoor workouts and **daily activities**."[12]

- "Galaxy Watch Active2's straps are made of a flexible fluoroelastomer that's **gentle on the wrist**."[13]

- "[the D-Buckle Hybrid Eco-Leather Band] contains a blend of FKM and material partially derived from plant-based sources, making it both durable and **environmentally conscious**."[14]

10. Defendant also represents sustainability features in its products, including the Galaxy Watches with the toxic bands. Specifically, Defendant markets a UL ECOLOGO Certification for the Galaxy Watch 3 series (2020), 4 series (2021), 5 series (2022), 6 series (2023), 7 series, Ultra, and FE (2024).[15] One of the criteria for ECOLOGO certification is the use of safe materials that do not cause harm to either

---

[10] *Watches*, SAMSUNG, https://www.samsung.com/us/watches/ (last accessed Dec. 27, 2024).
[11] *Galaxy Watch Rugged Sport Band*, SAMSUNG,
 https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-rugged-sport-band-m-l-gray-et-sdr91ljeguj/ (last accessed Dec. 27, 2024).
[12] *Galaxy Watch Rugged Sport Band*, SAMSUNG,
https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-rugged-sport-band-s-m-black-et-sdr90sbeguj/.
[13] *Sport Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/sport-band-for-galaxy-watch-active2-vivid-green-et-sfr82mgeguj/.
[14] *Galaxy Watch D-Buckle Hybrid Eco-Leather Band*, SAMSUNG,
https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-d-buckle-hybrid-eco-leather-band-m-l-camel-et-shr94ldeguj/ (last accessed Dec. 31, 2024).
[15] *UL ECOLOGO Certification*, SAMSUNG,
https://www.samsung.com/global/sustainability/popup/popup_doc/AYYFuK0KA0wAIx8-/

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

people or the environment.[16] In truth, Defendant's Products harm both.

11.    The Challenged Representations also include Defendant's representations concerning its commitment to environmental sustainability by stating: "We don't stop at 'good enough', because we care about our customers and employees' health and their environments[,]" "We strive to minimize any potential adverse effects on the health of our customers, employees, or to the environment that may arise from products containing hazardous substances or chemicals used at our manufacturing sites[,]" and promising to "Reduc[e] the use of hazardous substances for the health of our customers and employees."[17] Defendant  goes on to tout their "environmental consciousness," highlighting their environmental certifications such as the United States Electronic Product Environmental Assessment Tool (EPEAT), as well as their "management of hazardous and chemical substances in their products."[18]



12.    The Challenged Representations also include Samsung's health focused messaging   discussed   below   and   wide-spread   recommendations   to   use   the

[16] Zach Stein, *ECOLOGO Certification Program*, Carbon Collective (Oct. 1, 2024), https://www.carboncollective.co/sustainable-investing/ecologo-certification-program; see also *ECOLOGO Certification Program*, UL Solutions, https://www.ul.com/resources/ecologo-certification-program (last accessed Dec. 31, 2024).
[17] *Sustainability in Operations*, Samsung, https://www.samsung.com/global/sustainability/planet/sustainable-operations/ (last accessed Dec. 30, 2024).
[18] *Sustainability*, Samsung, https://www.samsung.com/us/sustainability/environment/eco-conscious-products/

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

unreasonably hazardous watches day and night to track exercise routines, heartbeat, wellness, and sleep. For example, Defendant reiterates that the watch (with its preinstalled applications) should be used to "improve[] sleep" and "wellness", "guide [consumers] through healthier sleeping patterns," "help track [sleep] progress," "create a personalized heart rate zone based on [person's] activities," and track "irregular heart rhythms."[19]

13. Defendant's health-focused messaging is part of its pervasive and widespread marketing campaign across all media. For example, Defendant has combined Galaxy AI with Samsung Health to "help you **improve your daily wellness**."[20] Vice President and Head of Digital Health Team, Mobile eXperience Business at Samsung Electronics Dr. Hon Pak even emphasizes "Samsung's desire to be **a changing force in consumers' health**."[21] According to Samsung, "uniting [] health data" in their Galaxy devices such as the Galaxy smartwatches exemplifies their "vision [] **to improve the health of billions**…."[22] Indeed, Samsung has an entire page titled "Samsung Health," purporting to empower consumers to take control of their health; on that same page, the Galaxy smartwatches, with their toxic bands, are prominently displayed:[23]

---

[19] *Explore the new features on the Galaxy Watch6 Series*, SAMSUNG, https://www.samsung.com/us/support/answer/ANS00092492/?msockid=2f5e429e81 c7677423a257bf802966ca.

[20] *Galaxy AI is Coming to New Galaxy Watch for More Motivational Health*, SAMSUNG MOBILE PRESS, https://www.samsungmobilepress.com/media-assets/galaxy-watch6/ (last accessed Dec. 30, 2024).

[21] Carolina Milanesi, *Samsung's Mission to Support Customers' Quest for Better Health*, FORBES, (updated May 7, 2023), https://www.forbes.com/sites/carolinamilanesi/2023/05/07/samsungs-mission-to-support-customers-quest-for-better-health/.

[22] *Solving the Digital Health Dilemma: Samsung's Vision for an Intelligent Health Platform*, SAMSUNG NEWS (Feb. 26, 2024), https://news.samsung.com/us/solving-the-digital-health-dilemma-samsungs-vision-for-an-intelligent-health-platform/.

[23] *Samsung Health*, SAMSUNG, https://www.samsung.com/us/apps/samsung-health/?msockid=15e4ccdcf63e65591dcedc7ef7d0643e.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265



14.    Despite health and environmental promises to the contrary, Defendant continues to manufacture and sell the Products, which contain the unreasonably hazardous "forever chemical" perfluorohexanoic acid (PFHxA), a dangerous form of PFAS that pose significant harms to people and the environment. The elevated levels of PFAS present in these Products are particularly hazardous given the intended prolonged and direct skin contact and continuous wearing of Defendant's Products – all day or all night, every day – as directed by Defendant to monitor consumers' health, wellness, and sleep. The intended wearing of the watches on the underside of the wrist, combined with body heat and thin layer of skin, makes these toxic chemicals particularly prone to absorption. PFAS or other chemicals absorption through the skin has been known for decades.[24]

_____

[24] Jennifer Franko et. al., *Dermal Penetration Potential of Perfluorooctanoic Acid (PFOA) in Human and Mouse Skin*, Journal of Toxicology and Environmental Health (Nov. 2, 2011), https://www.tandfonline.com/doi/full/10.1080/15287394.2011.615108 (scientific

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

15.    In developing the unreasonably hazardous and dangerous Products, which Defendant markets for everyday wear, Defendant knew or, at a minimum, should have known the danger the Products carry to human health, especially for Products with the daily/nightly and prolonged contact with the skin on the underside of the wrist, where body's absorption rate of the toxic chemicals is heightened.

16.    **The Products.** The Products at issue (including Samsung products listed in Figure 1 below, ¶ 20) are sold to consumers in the United States and the State of California, and contain the Material Omission or one of the Challenged Representations as part of the Products' pervasive, consistent, and widespread false advertising across the web and all other media (collectively referred to herein and throughout this complaint as the "**Products**").

17.    **The Deception of the Challenged Representations and Unlawful Marketing & Sale of the Products.** The Material Omission and Challenged Representations mislead reasonable consumers into believing the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to further human health and, thus, free from toxic chemical substances like PFAS, which are harmful to the environment and pose risk of serious harm to humans, especially when absorbed by the skin daily and all day long, as per use directed and intended by Defendant, and on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened. However, the Products fail to live up to Defendant's promises. Instead, Products are toxic to consumers due to the presence of PFAS, confirmed by a recent study investigating the level of PFAS in multiple smartwatch bands, including Defendant's.[25] By falsely, misleadingly, and deceptively marketing

article in 2012 regarding dermal absorption of PFOAS, a type of PFA, concluding that PFOA is "dermally absorbed and under certain conditions the skin may be significant route of exposure")

[25] Alyssa Wicks, Heather D. Whitehead, and Graham F. Peaslee, *Presence of Perfluorohexanoic Acid in Fluoroelastomer Watch Bands*, Environmental Science & Technology Letters (Dec. 18, 2024), https://pubs.acs.org/doi/10.1021/acs.estlett.4c00907.

10

the Products with the Material Omission and Challenged Representations, Defendant has sought to take advantage of consumers' desire for safe and sustainable smartwatch bands. In this way, Defendant has charged consumers a premium for Products that comport with the Challenged Representations that they would not have otherwise paid if Defendant disclosed the Material Omission. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Accordingly, Defendant's Challenged Representations and Material Omission are misleading and deceptive, and therefore unlawful.

18.    Below is a fair and accurate depiction of some of the Products.[26]



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

---

[26] *See Defendant's official website*: *Galaxy Watch Sport Band*, Samsung, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/sport-band-for-galaxy-watch-active2-vivid-green-et-sfr82mgeguj/ (last accessed Dec. 27, 2024); *Galaxy Watch Fluoroelastomer Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/silicone-band-for-galaxy-watch-active--galaxy-watch-42mm--black-et-sfr50mbeguj/ (last accessed Dec. 27, 2024); *Galaxy Watch Sport T-Buckle Band Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-sport-t-buckle-band-m-l-graphite-et-sfr94lbeguj/ (last accessed Dec. 27, 2024)

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

19.    **PFAS Testing. Research confirms that PFAS can be absorbed by the skin and enter the bloodstream, and thus, dermal exposure can be a significant source of exposure to PFAS.**[27] This is of particular concern to smartwatch users, which are often worn for many hours a day, including overnight, to track sleep patterns and other health data. Defendant thus promotes long-term exposure to PFAs directly on, and through, the skin by directing the public to wear its Products, which contain elevated levels of toxic substances.

20.    A study published in Environmental Science & Technology Letters[28] tested multiple smartwatch band samples, including Samsung's fluoroelastomer smartwatch bands, using particle-induced gamma-ray emission ion beam analysis and liquid chromatography-tandem mass spectrometry to determine the material's total fluorine content and identify the specific type of polyfluoroalkyl substances (PFAS) present. Defendant Samsung was among the brands of fluoroelastomer watch band manufacturers tested in the study. Elevated levels of fluorine were found in the midrange ($15-30) and expensive (>$30) smartwatch bands. The Products meet or exceed the $30 price point, falling in the "expensive" range, according to the study.[29] *See Figure 1 below.* Ultimately, it was determined that the "expensive" smartwatch bands, including Defendant's, contained significantly elevated levels of fluorine (from 49.7% - 90.7%), an indicator of the presence of PFAS. Elevated levels of the PFA perfluorohexanoic acid (PFHxA) were also more prevalent in mid-range and expensive watch bands that exceeded $15. According to the study, the median concentration for samples with detectable PFHxA, 773 ng/g, is very high in

---

[27] Oddný Ragnarsdóttir et. al*., Dermal bioavailability of perfluoroalkyl substances using in vitro 3D human skin equivalent models*, ENVIRONMENTAL INTERNATIONAL (Jun. 2024), https://www.sciencedirect.com/science/article/pii/S0160412024003581 (last accessed Dec. 27, 2024).

[28] Wicks et. al., *supra n. 25.*

[29] Samsung watchbands were tested in this study, and their band price ranges fall in the "expensive" range according to the study.

CLASS ACTION COMPLAINT

comparison to other recent studies, which, combined, had observed PFHxA concentrations up to 199 ng/g.[30]

***Figure 1***

| | |
|---|---|
| Fluoroelastomer Band[31] | $30.00 |
| Sport Band[32] | $30.00 |
| Sport T-Buckle Band[33] | $49.99 |
| Rugged Sport Band[34] | $49.99 |
| Extreme Sport T-Buckle Band[35] | $49.99 |
| D-Buckle Hybrid Eco-Leather Band[36] | $79.99 |

---

[30] Wicks et. al., *supra n. 25*.

[31] *Galaxy Watch Fluoroelastomer Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/silicone-band-for-galaxy-watch-active--galaxy-watch-42mm--black-et-sfr50mbeguj/ (last accessed Dec. 27, 2024).

[32] *Galaxy Watch Sport Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/sport-band-for-galaxy-watch-active2-vivid-green-et-sfr82mgeguj/ (last accessed Dec. 27, 2024).

[33] *Galaxy Watch Sport T-Buckle Band Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-sport-t-buckle-band-m-l-graphite-et-sfr94lbeguj/ (last accessed Dec. 27, 2024).

[34] *Galaxy Watch Rugged Sport Band*, SAMSUNG,  https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-rugged-sport-band-m-l-gray-et-sdr91ljeguj/ (last accessed Dec. 27, 2024).

[35] *Galaxy Watch Extreme Sport T-Buckle Band Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-extreme-sport-t-buckle-band-m-l-green-black-et-sxr94lgeguj/#specs (last accessed Dec. 27, 2024).

[36] *Galaxy Watch D-Buckle Hybrid Eco-Leather Band*, SAMSUNG, https://www.samsung.com/us/mobile/mobile-accessories/smartwatches/galaxy-watch-d-buckle-hybrid-eco-leather-band-m-l-camel-et-shr94ldeguj/ (last accessed Dec. 31, 2024).

13

CLASS ACTION COMPLAINT

21. **Consumer Demand for Safe Smartwatch Bands.** Consumers have a great concern for safe and chemical-free smartwatch bands that are worn directly on the skin for extended periods of time, every day.

22. **Challenged Representations on the Products' Advertising and Marketing.** Defendant takes advantage of consumers' need for safe smartwatch bands, convincing consumers that the Products are safe for humans to wear every day or night, are designed to track and advance human health, and are environmentally sustainable, and, thus, free from toxic chemicals like PFAS.

a. **Design/Purpose.** The Products are watch bands on smartwatches which are used and promoted as environmentally sustainable and made for everyday wear and prolonged use, to track and further human health and well-being.

b. **Challenged Representations.** Defendant advertises and markets the Products with the Challenged Representations, each of which convey, that the Products are specifically designed to track and further human health, are made for everyday wear and prolonged use, and are environmentally sustainable.

c. **Material Omission.** Defendant fails to disclose the Material Omission anywhere on the Products' advertising and marketing to inform consumers that the Products are not, contrary to their design/purpose and Challenged Representations, free from toxic PFAS in excessive levels that are absorbed directly through the skin and into the bloodstream with regular use as intended and directed.

23. The Challenged Representations are widely and prominently dispersed throughout Defendant's official website, social media, and Defendant's authorized retail vendors. The net-effect on consumers who view the Products is the impression that Products are safe for everyday wear and use, environmentally sustainable, and

14

designed specifically to promote human health. The consumers believe that the Products are free from toxic chemical substances like PFAS, which are harmful to the environment, and pose serious risk of harm to consumers' health – especially when absorbed by the skin during prolonged use during the day or night, as per use directed and intended by Defendant, on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened. Defendant reinforces its deceptive advertising and marketing by materially omitting that the Products actually contain toxic PFAS in excessive levels that are absorbed directly through the skin and into the bloodstream with regular use as intended and directed.

24. **Primary Dual Objectives.** Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (defined *infra*), for dual primary objectives. ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the price premium Plaintiff and consumers have overpaid for the Products as a result of the Material Omission and Challenged Representations, as consistent with permissible law (including, for example, damages,[37] restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). ***Two***, Plaintiff seeks, on his individual behalf and on behalf of the Class, injunctive relief to stop Defendant's unlawful manufacturing, marketing, and sale of the Products with the Material Omission and Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products live up to the Material Omission and Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: disclosure of the Material Omission on the Products' advertising and removal or modification of the Challenged Representations; disclosure of the Material Omission in the Product's advertising and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

---

[37] Except as to the Consumer Legal Remedies Act ("**CLRA**") claim.

removal or modification of the Challenged Representations; modification of the Products so that they live up to the Challenged Representations; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.    <u>JURISDICTION</u>

25.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

26.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of this forum by conducting substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

## III.    <u>VENUE</u>

27.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff, as identified below, purchased the unlawful Products in this District with the Challenged Representations and Material Omission, and Defendant has deliberately marketed, advertised, and sold the Products within this District using the Challenged Representations and Material Omission.

## IV.    <u>PARTIES</u>

28.    **Plaintiff Gonzalez.** The following is alleged based upon Plaintiff Anthony Ray Gonzalez's personal knowledge:

      a.    **Residence.** Plaintiff is a resident of the County of Los Angeles, in the State of California.

///

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b. **Purchase Details.** Plaintiff purchased the Samsung Galaxy Watch 6 44mm which comes with the fluoroelastomer Sport Band **(the "Purchased Product"**) for approximately $270 at Sam's Club in El Monte, California, on December 10, 2023.

c. **Reliance on Challenged Labeling Claims.** In deciding to make the purchase, Plaintiff Gonzalez viewed and relied upon the Material Omissions and Challenged Representations on the Products' official website and other Samsung advertising and marketing, leading Plaintiff to believe that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and, thus, free from harmful toxic chemicals like PFAS that would cause him harm, especially when absorbed by the skin daily, and all day/night long, as per use directed and intended by Defendant, and on the underside of the wrist, where absorption of the toxic chemicals is heightened. Plaintiff relied on Samsung's health centered marketing campaign, and purchased the product for health support purposes, including monitoring his heart rate and sleep patterns. Plaintiff was experiencing sleep apnea, and, in reliance on Defendant's representations of the Product's features, purpose, and recommended use, wore it while sleeping, believing this was safe to do.

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Gonzalez did not know of the Material Omissions or that the Challenged Representations were false—i.e., that the Products contain toxic PFAS, pose an unreasonable safety hazard to human health and environment with intended use, and are not safe for everyday wear and use as advertised.

CLASS ACTION COMPLAINT

e. **No Notice of Contradictions.** Plaintiff Gonzalez did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' advertising and marketing that contradicted the prominent Challenged Representations or otherwise suggested that the Products contain PFAS, and are unsafe for everyday wear and use, harmful to human health and environment.

f. **Causation/Damages.** Plaintiff Gonzalez would not have purchased the Products or would not have paid as much for the Products, had the Material Omission been disclosed and/or had Plaintiff otherwise known that the Challenged Representations were not true—i.e., that the Products contain toxic chemicals, PFAS, posing an unreasonable safety hazard to human health and environment, and are thus, not safe for everyday wear and prolonged use. Initially, Plaintiff was wearing the Purchased Product nearly all day, and after several weeks of prolonged use, he developed a burning rash where the Product touches the skin.

g. **Desire to Repurchase.** Plaintiff Gonzalez continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were true—i.e., if the Products are environmentally sustainable, and designed specifically to further human health, and are safe for everyday wear and use, and thus, free from toxic PFAS.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Gonzalez is not personally familiar with the science behind the Products as he does not possess any specialized knowledge, skill, experience, or education in clothing materials, production, and safety. Thus, Plaintiff Gonzalez is unable to determine whether the Products'

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

Challenged Representations are true—i.e., whether the Products contain PFAS making them unsafe for everyday wear, and instead hazardous to Plaintiff's and the public's health and environment.

i. **Inability to Rely.** Plaintiff Gonzalez is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' advertising and marketing.

29.   **Plaintiff's Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations and Material Omission. Plaintiff would like to purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiff is an average consumer who is not sophisticated in, for example, watch band chemical composition or exposure, and/or whether the Products are free from undisclosed chemicals. Since Plaintiff would like to purchase the Products again to obtain the benefits of the Challenged Representations that Defendant continues to use—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representations on Defendant's advertisements.

30.   Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and, in the future, deprived of the ability to rely on the Challenged Representations in deciding to purchase the Products.

### *Defendant*

31.   Defendant Samsung Electronics America, Inc., **("Defendant")** is an active New York corporation with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 07660-2118. At all relevant times, Defendant was conducting business in the state of California, including the Class

19

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Period. Defendant is one of the owners, manufacturers, marketers, and distributors of the Products, and is the company that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations and Material Omission on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Product.

## V.    FACTUAL ALLEGATIONS

### A.    The Smartwatch Market

32.    Samsung is among the three largest smartwatch manufacturers, holding 11% of the global smartwatch market share.[38] The smartwatch market is rapidly growing, driven by increasing consumer demand and technological advancements.[39] The global smartwatch industry is currently valued at around $50.57 billion, and expected to reach $143.19 billion by 2032.[40] There are 454.69 million smartwatch users worldwide, reflecting a 41% increase from 2023.[41] The increasing trend of health consciousness is a significant driver of the market growth.[42] Tracking and furthering health is a primary use of smartwatches. For example, 92% of smartwatch users report using smartwatches to track and improve their health and fitness,[43] which is why the majority of consumers look for reputable brands and rely on

---

[38] Naveen Kumar, *Smartwatch Statistics (2025): Market & Sales Data*, DemandSage (Dec. 6, 2024), https://www.demandsage.com/smartwatch-statistics/#:~:text=Apple%20holds%2021%25%20of%20the%20global%20smartwatch%20market%20share.,Are%20Predicted%20To%20Be%20Shipped
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

representations of health and safety when making their purchase decision. Indeed, studies show that smartwatch users wear smartwatches for an average of 11 hours per day,[44] and users often wear them for over 12 hours per day,[45] further rising concerns of prolonged exposure to chemicals and harmful materials in the smartwatches, including Defendant's, that sit directly on the skin.

**B.**   **The Products' Advertising and Marketing**

33.   **Website Advertising**. Defendant emphasizes the Challenged Representations in its advertising of the Products as part of its marketing campaign and brand strategy of the Products. Not only has Defendant marketed and advertised the Products with the Challenged Representations, but Defendant has engaged in a marketing campaign initiated before and continuing throughout the Class Period (defined *infra*) that repeats and reinforces the Challenged Representations. Defendant's marketing campaign and brand strategy is evidenced by its https://www.samsung.com/us website. Currently, on Defendant's official brand website, Defendant showcases the Challenged Representations. Furthering consumer health and well-being are at the core of Defendant's smartwatch marketing, together with prominent promises of environmental stewardship.

**C.**   **Defendant's Products Contain PFAS**

34.   As a result of Defendant's extensive marketing and advertising of the Samsung brand and Products, as detailed above, reasonable consumers are led to believe the Products are made of safe and environmentally sustainable materials. Contrary to the Challenged Representations, the Products contain PFAS, which are dangerous, toxic ingredients that are harmful to humans and the environment. The

---

[44] Anna L Beukenhorst et. al., *Engagement and Participant Experiences With Consumer Smartwatches for Health Research: Longitudinal, Observational Feasibility Study,* JMIR Mhealth Uhealth (Jan. 29, 2020), https://pmc.ncbi.nlm.nih.gov/articles/PMC7016619/#:~:text=Engagement%20With%20Smartwatch%20The%20median%20daily%20wear,and%2016.00%20and%2021.18%2C%20respectively%20(Figure%203).

[45] Wicks et. al., *supra n. 25.*

CLASS ACTION COMPLAINT

Products' PFAS are inhaled and absorbed by the body through the dermal layer of the skin, enter and remain in the bloodstream, and further accumulate in the body's tissues.[46, 47] The chemicals also contaminate wastewater during manufacturing, washing, and disposal processes.[48, 49] As such, they pollute the soil and contaminate drinking water sources.[50]

35. Defendant's Products contain elevated levels of PFAS, as explained *supra* ¶¶ 19-20.

**D.    Health Hazards of PFAS and Regulatory Background**

36. In 2017, leading cancer experts from the World Health Organization's International Agency for Research on Cancer ("**IARC**") declared PFAS as a "possible human carcinogen," based on correlations with kidney and testis cancer in subjects who were heavily exposed to the toxins.[51] California listed perfluorooctanoic acid ("**PFOA**"), one of the most detected types of PFAS, in its Proposition 65 registry of

---

[46] Calvert, L. et al., *Assessment of the emerging threat posed by perfluoroalkyl and polyfluoroalkyl substances to male reproduction in humans*. FRONTIERS IN ENDOCRINOLOGY, 12 (2022), https://www.frontiersin.org/articles/10.3389/fendo.2021.799043. (Last visited June 26, 2024).

[47] *Your activewear could be leaching toxic chemicals—Here's what to do,* NZ HERALD (Nov. 3, 2023), https://www.nzherald.co.nz/lifestyle/your-gym-clothes-could-be-leaching-toxic-chemicals-new-study-reveals/DSWZ5GI2SNEBJD36OYMEUOO3TU/. (Last visited June 26, 2024).

[48] *"Forever chemicals" called pfas show up in your food, clothes, and home*, NATURAL RESOURCES DEFENSE COUNCIL (Apr. 12, 2023), https://www.nrdc.org/stories/forever-chemicals-called-pfas-show-your-food-clothes-and-home. (Last visited June 26, 2024).

[49] *Your activewear could be leaching toxic chemicals—Here's what to do, supra* note 47.

[50] *Per- and Polyfluorinated Substances (PFAS) Fact Sheet*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html. (Last visited June 26, 2024).

[51] *PFAS Exposure and Risk of Cancer,* NATIONAL CANCER INSTITUTE. (Last visited June 26, 2024).

22

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

chemicals that "cause birth defects or other reproductive harm" and "cause cancer."[52,53]

37. PFAS are synthetic, long-lasting chemicals of industry, the components of which break down very slowly over time.[54] Their inability to break down, combined with their potential to accumulate in people, animals, and the environment over time, earned them the ominous name, "forever chemicals."[55] PFAS can be found in drinking water, soil and water at/near waste sites, fire extinguishing foam, facilities that produce/use PFAS, clothing and clothing packaging, household products, personal care products, and biosolids.[56]

38. PFAS are synthetic chemicals that have been used in consumer products since the 1940s.[57] PFAS are particularly dangerous due to their tendency to bioaccumulate in the human body.[58, 59] A study analyzed 21 samples of PFAS, including PFOA, from 99 samples of human autopsy tissues.[60] The presence of PFAS was found in every human tissue, and accumulation of PFAS in tissues was observed

---

[52] Wee, S. Y., & Aris, A. Z. *Revisiting the "forever chemicals", PFOA and PFOS exposure in drinking water.* NPJ CLEAN WATER, *6*(1), 1–16 (Aug. 21, 2023), https://doi.org/10.1038/s41545-023-00274-6. (Last visited June 26, 2024).

[53] *See*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT https://www.p65warnings.ca.gov/fact-sheets/pfoa-perfluorooctanoic-acid. (Last visited June 26, 2024).

[54] *PFAS Explained*, EPA (Oct. 25, 2023), https://www.epa.gov/pfas/pfas-explained.

[55] *Per- and Polyfluoroalkyl Substances (PFAS)*, EPA (Apr. 10, 2024), https://www.epa.gov/pfas; *Our Current Understanding of the Human Health and Environmental Risks of PFAS, supra* note 6.

[56] *Id.*

[57] *Per- and Polyfluoroalkyl Substances (PFAS) and Your Health*, AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (Jan. 18, 2024), https://www.atsdr.cdc.gov/pfas/index.html. (Last visited June 26, 2024).

[58] *History and Use of Per- and Polyfluoroalkyl Substances (PFAS) Found in the Environment*, INTERSTATE TECHNOLOGY REGULATORY COUNCIL (Sept. 2023), https://pfas-1.itrcweb.org/wp-content/uploads/2023/10/HistoryandUse_PFAS_Fact-Sheet_Sept2023_final.pdf. (Last June 26, 2024).

[59] Pérez, F. et. al., *Accumulation of perfluoroalkyl substances in human tissues*. ENVIRONMENT INTERNATIONAL, 59, 354–362 (2013), https://doi.org/10.1016/j.envint.2013.06.004. (Last visited June 26, 2024).

[60] *Id.*

---

23

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

as well.[61] When entering the body, "PFAS bind to albumin in the blood stream and accumulate within the body's protein-rich tissues."[62] PFAS's "high propensity to accumulate in biological systems" threatens the health of those exposed to the chemicals.[63]

39.    Peer-reviewed scientific studies show that exposure to certain levels of PFAS lead to negative reproductive effects, such as decreased fertility and increased high blood pressure in pregnant women; negative developmental effects, or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes; increased risk of cancers, including prostate, kidney, and testicular cancers; reduced ability of the body's immune system to fight infections, including reduced vaccine response; interference with the body's natural hormones; and increased cholesterol levels and risk of obesity.[64, 65] Studies have shown that even low level exposure to PFAS result in suppression of the immune system, endocrine disruption, accelerated puberty, liver damage and thyroid changes.[66] Thus, PFAS present an immediate health risk to consumers, and over time, that risk only grows as the PFAS accumulate in consumers' bodies.

40.    In response to their negative health consequences, the EPA proposed regulations for maximum levels of certain PFAS in drinking water, estimating that its rule will prevent thousands of deaths and reduce tens of thousands of PFAS-

---

[61] *Id.*

[62] Calvert, L. et al*., Assessment of the emerging threat posed by perfluoroalkyl and polyfluoroalkyl substances to male reproduction in humans*. FRONTIERS IN ENDOCRINOLOGY, 12 (2022), https://www.frontiersin.org/articles/10.3389/fendo.2021.799043. (Last visited June 26, 2024).

[63] *Id.*

[64] *Our Current Understanding of the Human Health and Environmental Risks of PFAS, supra* note 6.

[65] Cook, *supra* note 7.

[66] *PFAS*, EWG (Apr. 10, 2024), https://www.ewg.org/tapwater/reviewed-pfcs.php.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

24

attributable illnesses.[67] Consumers now reasonably seek to avoid unnecessary exposure to PFAS to reduce risk of harm to their health and the environment, and when they are exposed to information about toxic chemicals like PFAS in products, they make different purchase decisions, where possible. Responsible companies that remove toxic chemicals like PFAS from their products and processes also reasonably expect, and in fact derive, a competitive advantage in the marketplace.

41.    The Centers for Disease Control and Prevention's ("**CDC**") biomonitoring studies reveal that four PFAS are likely in the blood of nearly every American,[68] which the EWG believes is a gross understatement.[69]

42.    The EPA notes the following harms from PFAS:[70]

- Reproductive effects such as decreased fertility or increased health blood pressure in pregnant women.

- Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes.

- Increased risk of some cancers, including prostate, kidney, and testicular cancers.

- Reduced ability of the body's immune system to fight infections, including reduced vaccine response.

---

[67] *Proposed PFAS National Primary Drinking Water Regulation*, U.S. ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas. (Last visited June 26, 2024).
[68] *Per- and Polyfluorinated Substances (PFAS) Factsheet*, CDC (May 2, 2022), https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html. (Last visited June 26, 2024).
[69] Evans, S. et al., *PFAS Contamination of Drinking Water Far More Prevalent Than Previously Reported*, ENVIRONMENTAL WORKING GROUP (2020), https://www.ewg.org/research/national-pfas-testing. (emphasis added) (Last visited June 26, 2024).
[70] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, *supra* note 6.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

- Interference with the body's natural hormones.

- Increased cholesterol levels and/or risk of obesity.

43.    PFAS have dangerous effects on the human body, including altered metabolism and increased risk of being overweight or obese, reduced fetal growth and fertility, "altered immune and thyroid function, liver disease, lipid and insulin dysregulation, kidney disease, adverse reproductive and developmental outcomes, and cancer."[71,72]

44.    PFAS cause low birth weight, birth defects, delayed development, and newborn deaths.[73] Children with increased exposure to PFAS have weaker immune responses to vaccinations and suffer additional childhood infections.[74,75]

45.    PFOA exposure is positively correlated with testicular and kidney cancers.[76] Specifically, researchers have found for each unit increase in the amount of PFOA exposure, the risk of testicular cancer increases by 34%, and the risk of kidney cancers increases by 10%.[77]

---

[71] Fenton, S. et al., *Per- and polyfluoroalkyl substance toxicity and human health review: Current state of knowledge and strategies for informing future research.* ENVIRONMENTAL TOXICOLOGY AND CHEMISTRY, 40(3), 606–630 (2021), https://doi.org/10.1002/etc.4890. (Last visited June 26, 2024).
[72] Kielsen, Katrine et al. *"Antibody response to booster vaccination with tetanus and diphtheria in adults exposed to perfluorinated alkylates."* JOURNAL OF IMMUNOTOXICOLOGY, 13,2 (2016), https://pubmed.ncbi.nlm.nih.gov/26181512/. (Last visited June 26, 2024).
[73] "What are the health effects of PFAS?" ATSDR, https://www.atsdr.cdc.gov/pfas/health-effects/index.html. (Last visited June 26, 2024).
[74] *Id.*
[75] *Get the facts: Pfas "forever chemicals."* TOXIC-FREE FUTURE, https://toxicfreefuture.org/toxic-chemicals/pfas-forever-chemicals/. (Last visited June 26, 2024).
[76] Barry, V. et al., *Perfluorooctanoic acid (Pfoa) exposures and incident cancers among adults living near a chemical plant.* ENVIRONMENTAL HEALTH PERSPECTIVES, 121(11–12), 1313–1318 (2013). https://doi.org/10.1289/ehp.1306615. (Last visited June 26, 2024).
[77] *Id.*

CLASS ACTION COMPLAINT

46. Increased exposure to PFAS leads to higher cholesterol levels. The CDC's National Health and Nutrition Examination Survey, with participants ranging from 12 to 80 years of age, showed that the participants in the highest quartile of perfluorooctane sulfonic acid ("**PFOS**") exposure had cholesterol levels that were 13.4 mg/dL higher than the participants within the lowest quartile of PFOS exposure age.[78]

47. PFAS have a negative effect on thyroid function. The thyroid is critical for cardiovascular health, fertility, fetal neurodevelopment, and metabolism.[79] Studies have confirmed the disruptive effects of PFAS exposure on the circulation of thyroid hormone levels in the body.[80] In a study involving pregnant mice, PFAS were found to have accumulated in their placentas, impacting fetal development.[81] In humans, PFAS exposure had produced significant thyroid functioning changes in pregnant mothers and their newborns.[82] In another study, higher PFAS concentrations in pregnant women led to lower birth weight and ponderal index (body mass) of their newborns.[83]

48. Research from a national health survey on the general population concluded that increased levels of PFAS in the blood increased risk of fatty liver

[78] Nelson, J. et al., *Exposure to polyfluoroalkyl chemicals and cholesterol, body weight, and insulin resistance in the general U.S. population*. ENVIRONMENTAL HEALTH PERSPECTIVES, 118(2), 197–202 (2010), https://doi.org/10.1289/ehp.0901165. (Last visited June 26, 2024).
[79] Coperchini, F. et al., *Thyroid disrupting effects of old and new generation pfas*. FRONTIERS IN ENDOCRINOLOGY, 11, 612320 (2021), https://doi.org/10.3389/fendo.2020.612320. (Last visited June 26, 2024).
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] Zheng, T. et al., *Adverse birth outcomes related to concentrations of per- and polyfluoroalkyl substances (Pfas) in maternal blood collected from pregnant women in 1960–1966*. ENVIRONMENTAL RESEARCH, 241, 117010 (2024), https://doi.org/10.1016/j.envres.2023.117010. (Last visited June 26, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

disease and worsened liver function.[84] These findings show that PFAS pose a higher risk for chronic liver disease in humans.[85]

### E. Defendant's Products Cause Serious and Irreversible and Environmental Harms

49. PFAS also pose a serious threat to the environment. PFAS have been found in water sources, including rivers and lakes, and in both terrestrial and aquatic animals.[86] Under normal conditions, "it can take over 1,000 years for some PFAS to degrade."[87,88,89] PFAS are constantly entering the environment through multiple stages in the manufacturing process. PFAS can be released into the environment during the chemical manufacturing process and through chemical additives that are applied to the finished product.[90] Since PFAS cannot be removed from water through standard water treatment processes, they move from water supplies into agricultural fields.[91,92]

---

[84] Zhang, X. et al., *Association of per- and polyfluoroalkyl substance exposure with fatty liver disease risk in US adults*. JHEP REPORTS, 5(5), 100694 (2024), https://doi.org/10.1016/j.jhepr.2023.100694. (Last visited June 26, 2024).

[85] *Id.*

[86] *Id.*

[87] *PFAS, what is it, why is it in our environment and why is it a problem*? PFAS. https://www.pfasfree.org.uk/about-pfas. (Last visited June 26, 2024).

[88] Russell, M. H. et al., *Investigation of the biodegradation potential of a fluoroacrylate polymer product in aerobic soils*. ENVIRONMENTAL SCIENCE & TECHNOLOGY, 42(3), 800–807 (2008), https://doi.org/10.1021/es0710499. (Last visited June 26, 2024).

[89] Washington, J. W. et al., *Degradability of an acrylate-linked, fluorotelomer polymer in soil*. ENVIRONMENTAL SCIENCE & TECHNOLOGY, 43(17), 6617–6623 (2009), https://doi.org/10.1021/es9002668. (Last visited June 26, 2024).

[90] Hansen, K. J. et al., *Quantitative characterization of trace levels of pfos and pfoa in the tennessee river*. ENVIRONMENTAL SCIENCE & TECHNOLOGY, 36(EPA8), 1681–1685 (2002), https://doi.org/10.1021/es010780r. (Last visited June 26, 2024).

[91] Becker, A. M. et al., *Perfluorooctane surfactants in waste waters, the major source of river pollution*. CHEMOSPHERE, 72(1), 115–121 (2008), https://doi.org/10.1016/j.chemosphere.2008.01.009. (Last visited June 26, 2024).

[92] *PFAS, what is it, why is it in our environment and why is it a problem*? PFAS. https://www.pfasfree.org.uk/about-pfas. (Last visited June 26, 2024).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

50.    PFAS also pose a threat to environmental and human health during the manufacturing process. Leaks from manufacturing facilities can spill PFAS into groundwater and soil.[93]

51.    PFAS are synthetic chemicals that have a chain of carbon and fluorine atoms with characteristically strong bonds.[94] PFAS emissions plague entire ecosystems: in one example, a fluorochemical manufacturing facility discharged wastewater containing PFAS into the Cape Fear River in North Carolina. As a result of the wastewater contamination, scientists detected PFAS in blood samples from Wilmington, North Carolina, residents,[95] as well as in striped bass,[96] and American alligators.[97] Both wildlife studies found PFAS to be immune toxicants, resulting in autoimmune-like pathology in American alligators and altered immune and liver function in striped bass.

52.    Unlike other chemicals, PFAS are uniquely harmful to the environment. PFAS are not removed by conventional wastewater treatment plants, and instead run off into lakes, streams, and groundwater, or as "sludge." PFAS contaminate sludge,

---

[93] *Textile manufacturing and pfas: Three phases of risk.* HALEY ALDRICH. https://www.haleyaldrich.com/resources/articles/textile-manufacturing-and-pfas-three-phases-of-risk/. (Last visited June 26, 2024).

[94] *"Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS),"* NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm#:~:text=More%20than%209%2C000%20PFAS%20have%20been%20identified. (Last visited June 26, 2024).

[95] Kotlarz, Nadine et al., *"Measurement of Novel, Drinking Water-Associated PFAS in Blood from Adults and Children in Wilmington, North Carolina."* ENVIRONMENTAL HEALTH PERSPECTIVES, https://pubmed.ncbi.nlm.nih.gov/32697103/. (Last visited June 26, 2024).

[96] Guillette, T. C. et al., *"Elevated levels of per- and polyfluoroalkyl substances in Cape Fear River Striped Bass (Morone saxatilis) are associated with biomarkers of altered immune and liver function."* ENVIRONMENT INTERNATIONAL 136 (2020), https://pubmed.ncbi.nlm.nih.gov/32044175/ (Last visited June 26, 2024).

[97] Guillette, T C et al., *"Blood concentrations of per- and polyfluoroalkyl substances are associated with autoimmune-like effects in American alligators from Wilmington, North Carolina."* FRONTIERS IN TOXICOLOGY 4:1010185 (Oct. 20, 2022), https://pubmed.ncbi.nlm.nih.gov/36337916/. (Last visited June 26, 2024).

29

or biosolids, extracted from the sewage treatment process,[98] which is otherwise nutrient-rich and recycled as fertilizer.[99] Once PFAS are cycled back into the soil, crops readily sequester the chemical, causing biomagnification up the food chain, furthering toxic accumulation in animals and humans.[100] PFAS are also absorbed by plants from industrial emissions, irrigation with contaminated water, leachates from landfill sites, and pesticide application.[101]

53.    The Products are not sustainable, environmentally conscious, or designed with consumers' wellness in mind, as promised. Instead, with regular use, they introduce "forever chemicals" into the human body, water supply, and broader ecosystems, committing irreversible human and environmental harm.

### F.    Plaintiff and Reasonable Consumers Were Misled into Buying the Products to Their Detriment

54.    **Reasonable Consumer's Perception.** The Material Omission and Challenged Representations lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations—meaning, consumers are led to believe that the Products are safe for everyday use and wear, environmentally sustainable, and designed specifically to further human health, and

---

[98] *"Wastewater Treatment Plants/ Industrial Pretreatment Program,"* MICHIGAN PFAS ACTION RESPONSE TEAM, https://www.michigan.gov/pfasresponse/investigations/wastewater. (Last visited June 26, 2024).

[99] *"What are biosolids, how are they used, and are they safe?"* WATER RESOURCES DIVISION, MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, https://www.michigan.gov/-/media/Project/Websites/egle/Documents/Programs/WRD/Biosolids/biosolids-what-how-safe.pdf?rev=b54e28b954a54dd8a43153688a1151b3#:~:text=Biosolids%20are%20the%20nutrient%2Drich,a%20fertilizer%20and%20soil%20amendment. (Last visited June 26, 2024).

[100] Wang, W. et al., *"Uptake and accumulation of per- and polyfluoroalkyl substances in plants,"* CHEMOSPHERE, SCIENCE DIRECT (2020), https://www.sciencedirect.com/science/article/pii/S0045653520317793. (Last visited June 26, 2024).

[101] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

are thus, free from toxic chemical substances like PFAS.

55. **Materiality.** The Challenged Representations and Material Omission are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that it is important to consumers that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and, thus, are free from PFAS toxic to them with regular use and to the environment at large.

56. **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations and Material Omission in deciding to purchase the Products.

57. **Falsity.** The Challenged Representations and Material Omission are deceptive because the Products contain toxic substances, PFAS, which are harmful to the environment, pose an unreasonable safety hazard to human health with regular use, and are especially unsafe for everyday wear and use.

58. **Consumers Lack Knowledge of Falsity.** The Class who purchased the Products, including Plaintiff, did not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations and Material Omission are false, misleading, deceptive, and unlawful. Nothing on Defendant's websites displays or advertising adequately, expressly, unambiguously, or conspicuously informs consumers that the Challenged Representations are false—specifically, that the Products contain toxic chemical substances - PFAS, and thus, are unsafe for everyday wear and use, and are hazardous to both environment and public health, especially to consumers who wear the Products all day or all night long, as per directed and intended use by Defendant. Even worse, Defendant's Products are designed to be worn on the underside of their wrist, where the body's absorption rate of the toxic chemicals is heightened. The Products' advertising and marketing unambiguously advertise the Products as being safe for everyday and prolonged use to promote health

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and environmental sustainability. The Products' advertisements do not contain any clear, conspicuously displayed statement(s), reasonably proximate to the Challenged Representations, where the reasonable consumers are likely to notice, read, and understand that the Challenged Representations are not true, and instead, the Products contain dangerous toxic chemicals, and are not environmentally sustainable nor safe for everyday wear.

59. **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations and Material Omission are false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations and Material Omission to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside the Products' design/purpose to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

    a. **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Challenged Representations and Material Omission would lead reasonable consumers into believing that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and, thus, are free from toxic chemicals like PFAS.

    b. **Knowledge of Falsity.** Defendant manufactured and marketed the Products with the Challenged Representations, but Defendant opted to make Products that do not conform with those representations. Specifically, Defendant advertised, labeled, and packaged the Products with the Challenged Representations, but chose to manufacture the Products with toxic chemicals, PFAS, which pose an unreasonable safety hazard to the environment and

a serious risk of harm to human health, especially when worn daily for prolonged period of time on the wrist – as directed by Defendant - where the body's absorption rate is heightened.

c. **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations materiality to consumers. Manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or Products line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the repeated use of the Challenged Representations throughout Defendant's marketing campaign demonstrates Defendant's awareness that the falsely advertised Products-attributes are important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d. **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations'—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations

mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

60. **Duty to Disclose Material Omission.** Defendant had, at all relevant times, an obligation to disclose the Material Omission—that the Products contain toxic chemicals, PFAS, and, thus, pose an unreasonable safety hazard to both the environment and human health. Defendant knew or should have known that reasonable consumers would perceive the Products and Material Omission to mean that the Products do not contain toxic chemicals like PFAS by advertising them as safe for everyday wear and use, economically sustainable and specifically designed to promote human health. Defendant also knew that this attribute – ability to wear the Products daily and use them all day or all night long was material to consumers and would serve as important purchasing factors. To advance its sales, and ensure the prolonged daily use of the Products, Defendant made the Challenged Representations, knowing that Plaintiff and the Class would reasonably rely on them, in deciding to purchase the Products. Defendant also knew or should have known that the Challenged Representations were false—that the Products contain toxic PFAS and, thus, are not economically sustainable and are unsafe for everyday wear and use.

61. **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's Challenged Representations and Material Omission, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

///

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## G.    No Adequate Remedy at Law

62.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations and omission, across a multitude of media platforms, including the Products' advertising and marketing, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for Products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders

CLASS ACTION COMPLAINT

related to similar representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations and Omission. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future sales of Products, and quantities of past/future sales of Products.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violations of the FAL and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while UCL, fraud, fraudulent inducement, fraudulent omission or concealment, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment/restitution claims are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.  **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.  CLASS ACTION ALLEGATIONS

63.  **Class Definition.** Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Class defined as follows:

///

///

///

**Nationwide Class**

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations or Material Omission on the Products' advertising and marketing, for purposes other than resale ("**Nationwide Class**"); and

**California Subclass**

> All residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Challenged Representations or Material Omission on the Products' advertising and marketing, for purposes other than resale ("**California Subclass**").

64.    Collectively, the Nationwide Class and California Subclass are referred to as the "**Class**".

65.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

66.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

67.    **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

68.    **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.    Whether Defendant's conduct of advertising and selling the Products as safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and thus, are free from toxic PFAS.

c.    Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

d.    Whether Defendant used deceptive representations and Material Omission in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

e.    Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

f.    Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

g.    Whether Defendant's advertising and marketing of the Products are misleading in violation of Business and Professions Code section 17500, *et seq*.;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

h.    Whether Defendant knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq*.;

i.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k.    Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

l.    Whether Plaintiff and the Class paid more money for the Products than they actually received;

m.    How much more money Plaintiff and the Class paid for the Products than they actually received;

n.    Whether Plaintiff and the Class are entitled to injunctive relief; and

o.    Whether Defendant was unjustly enriched by its unlawful conduct.

69.    **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

70.    **Typicality.**   Plaintiff's claims are typical of the claims of the Class Members they seek to represent because Plaintiff, like the Class Members purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

71.    **Adequacy.** Plaintiff is an adequate representative of the Class they seek to represent because their interests do not conflict with the interests of the Class

CLASS ACTION COMPLAINT

Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

72. **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

73. **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

74.   **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

75.   **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

76.   **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.   <u>CAUSES OF ACTION</u>

### <u>COUNT ONE</u>

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass and Nationwide Class*)**

77.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

78.   **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations. ///

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

79.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

80.    **False Advertising Claims.** Defendant, in its advertising and marketing of the Products, made misleading statements and a fraudulent omission regarding the quality and characteristics of the Products—specifically, the Challenged Representations and Material Omission—despite the fact the Products contain PFAS not environmentally sustainable nor safe for everyday wear and use, nor are they designed specifically to promote human health, as advertised by Defendant. Instead, the Products pose an unreasonable safety hazard to both environment, and human health, especially when worn on the underside of the wrist for prolonged hours of days and/or nights, as directed by Defendant, where the body's absorption rate of the toxic chemicals is heightened. Such claims and omissions appear on the advertising and marketing of the Products, which are sold online, at retail stores, and point-of-purchase displays.

81.    **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising because the Products contain PFAS – toxic chemicals, and are thus, not economically sustainable, and are dangerous for human health when are worn every day or every night, as directed and intended by Defendant, and worn on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened. Defendant knew (and knows) that the Products contain PFAS pose an unreasonable safety hazard, and yet Defendant intentionally advertised and marketed the Products to deceive reasonable consumers and continues to do so presently.

82.    **Misleading Advertising Claims Cause Purchase of Products.** Defendant's advertising and marketing of the Products led to, and continues to lead

CLASS ACTION COMPLAINT

to, reasonable consumers, including Plaintiff, believing that the Products are safe for everyday wear and use, environmentally sustainable, and specifically designed to promote human health, and, thus, are free from toxic chemicals like PFAS.

83.    **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations and Material Omission—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

84.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

85.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

86.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**CLASS ACTION COMPLAINT**

1    ordered to do so.

2        87.    **Injunction.** Pursuant to Business and Professions Code Sections 17203

3    and 17535, Plaintiff and the members of the California Subclass seek an order of this

4    Court enjoining Defendant from continuing to engage, use, or employ its practice of

5    advertising and marketing the sale and use of the Products. Likewise, Plaintiff and the

6    members of the California Subclass seek an order requiring Defendant to disclose

7    such misrepresentations and omission, and to preclude Defendant's failure to disclose

8    the existence and significance of said misrepresentations.

9        88.    **Causation/Damages.** As a direct and proximate result of Defendant's

10   misconduct in violation of the UCL, Plaintiff and members of the California Subclass

11   were harmed in the amount of the purchase price they paid for the Products. Further,

12   Plaintiff and members of the California Subclass have suffered and continue to suffer

13   economic losses and other damages including, but not limited to, the amounts paid

14   for the Products, and any interest that would have accrued on those monies, in an

15   amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for

16   violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains

17   to compensate Plaintiff and the California Subclass for said monies, as well as

18   injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm

19   that will result.

20       89.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this

21   cause of action for violation of the UCL on behalf of Plaintiff and the California

22   Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein

23   constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of

24   punitive damages as permitted by law. Defendant's misconduct is malicious as

25   Defendant acted with the intent to cause Plaintiff and consumers to pay for Products

26   that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded

27   the rights of Plaintiff and consumers as Defendant was, at all times, aware of the

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**CLASS ACTION COMPLAINT**

probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

90.    For all Class members outside of the California Subclass, these claims are brought under the relevant consumer protection statute for the state in which they reside. For each state, the relevant statutes are as follows: Alabama—Deceptive Trade Practices Act (Ala. Code § 8-19-1, *et seq.*); Alaska—Unfair Trade Practices and Consumer Protection Act (Alaska Stat. § 45.50.471, *et seq.*); Arizona—Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*); Arkansas—Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*); Colorado—Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut—Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a, *et seq.*); Delaware—Consumer Fraud Act (Del. Code Ann. tit. 6, § 2511, *et seq.*); District of Columbia—D.C. Code § 28-3901, *et seq.*; Florida—Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.20, *et seq.*); Georgia—Fair Business Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*); Hawaii—Haw. Rev. Stat. § 480-1, *et seq.*); Idaho—Consumer Protection Act (Idaho Code Ann. § 48-601, *et seq.*); Illinois—Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*); Indiana—Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*); Iowa—Iowa Code § 7.14.16, *et seq.*); Kansas—Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*); Kentucky—

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.110, *et seq.*); Louisiana—Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. § 51:1401, *et seq.*); Maine—Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, § 205A, *et seq.*); Maryland—Maryland Consumer Protection Act (Md. Code Ann., Com. Law § 13-101, *et seq.*); Massachusetts—Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§ 1-11); Minnesota—False Statement in Advertising Act (Minn. Stat. § 8.31, Minn. Stat. § 325F.67), Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.*); Mississippi—Consumer Protection Act (Miss. Code Ann. § 75-24, *et seq.*); Missouri—Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*); Montana—Unfair Trade Practices and Consumer Protection Act (Mont. Code. Ann. § 30-14-101, *et seq.*); Nebraska—Consumer Protection Act (Neb. Rev. Stat. § 59-1601); Nevada—Trade Regulation and Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*, Nev Rev Stat. § 41.600); New Hampshire—Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*); New Jersey—N.J. Stat. Ann. § 56:8-1, *et seq.*); New Mexico—Unfair Practices Act (N.M. Stat. § 57-12-1, *et seq.*); New York—N.Y. Gen. Bus. Law §§ 349, 350, N.Y. Exec. Law § 63(12); North Carolina—N.C. Gen. Stat. § 75-1.1, *et seq.*); North Dakota—N.D. Cent. Code § 51-15-01, *et seq.*); Ohio—Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, *et seq.*); Oklahoma—Consumer Protection Act (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon—Unlawful Trade Practices Law (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania—Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. § 201-1, *et seq.*); Rhode Island—Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Carolina—Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*); South Dakota—Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*); Tennessee—Consumer Protection Act (Tenn. Code Ann. § 47-18-101, *et seq.*); Texas—Deceptive Trade Practices—Consumer Protection Act

(Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*); Utah—Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*); Vermont—Consumer Fraud Act (Vt. Stat. Ann. tit. 9, § 2451, *et seq.*); Virginia—Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*); Washington—Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia—W. Va. Code § 46A-6-101, *et seq.*); Wisconsin—Wis. Stat. § 100.18, 100.20; Wyoming—Consumer Protection Act (Wyo. Stat. Ann. § 40-12-101, *et seq.*).

### *"Unfair" Prong*

91.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

92.    **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations and omission does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive advertising and marketing of the Products. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

93.    **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

94.    **No Utility.** Here, Defendant's conduct of labeling the Products with the Challenged Representations and Material Omission when the Products contain PFAS, toxic chemical substances harmful to the environment, which also pose risk of serious harm to human health, especially when absorbed by the skin daily and all day long as per use directed and intended by Defendant, and on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

95.    **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

96.    **Unfair Conduct.** Defendant's advertising and marketing of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omission constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

97.    **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

98.    **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

99.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the Products with the Challenged Representations.

100. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact, have lost money and were exposed to increased health risks as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products which were advertised as economically sustainable, safe for everyday wear and use, and designed specifically to promote human health, and, thus, free from toxic chemicals like PFAS. PFAS are harmful to the environment and pose serious risk of harm to the public, especially when they are worn daily for prolonged periods of time – entire day and/or night – as directed by Defendant, on the underside of the wrist where the body's absorption rate of the toxic chemicals is heightened. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and marketing were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

101. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

102. **Fraudulent & Material Challenged Representations and Omission.** Defendant used the Challenged Representations and Material Omission with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations and Material Omission are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations and omission are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

103.  **Fraudulent Business Practice.** As alleged herein, the misrepresentations and omission by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

104.  **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and deceptive Challenged Representations and omission to their detriment in that they purchased the Products.

105.  **Reasonably Available Alternatives.** Defendant has reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and omission.

106.  **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

107.  **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Products with the Challenged Representations and Material Omission.

108.  **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that are safe for everyday wear and use, environmentally sustainable, and designed to promote human health, and, thus, are free from PFAS. Instead, the Products contain dangerous toxic chemical substances, like PFAS, which are harmful to the environment and pose risk of serious harms to humans, especially when used as directed by Defendant – worn on the wrist all day – to track their fitness/health, or all night – to track their sleep. Plaintiff and the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

52

**CLASS ACTION COMPLAINT**

California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

109. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

110. **Violations of CLRA and FAL.** Defendant's advertising and marketing of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

111. **Fraud.** Additionally, Defendant's use of the Challenged Misrepresentations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

112. **Additional Violations.** Defendant's conduct in making the deceptive representations and omission described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

113. **Unlawful Conduct.** Defendant's advertising and marketing of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

conduct.

114. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Products with the Challenged Representations and Material Omission.

115. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

116. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

117. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and are thus, free from toxic chemical substances like PFAS. PFAS are harmful to the environment and pose risks of serious harm to humans, especially when absorbed by skin daily, and all day long – as per use directed and intended by Defendant – on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

///

///

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

118. **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

119. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

120. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

121. **Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Material Omission and Challenged Representations disseminated to the public through the Products' advertising and marketing. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

122. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

123. **Intent to Sell.** Defendant's Material Omission and Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

124. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

125. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

## **COUNT THREE**

### **Violation of California Consumers Legal Remedies Act**

### **(Cal. Civ. Code §§ 1750, *et seq.*)**

### **(*On Behalf of the California Subclass*)**

126. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

127. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

128. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

129. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

130. **Defendant.** Defendant is "person," as defined by the CLRA in California Civil Code §1761(c).

131. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

132. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

133. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations and Material Omission:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a.  Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

b.  Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . when they are of another."

c.  Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [] as advertised."

134. **Knowledge.** Defendant's uniform and material representations and omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Challenged Representations and Material Omission were misleading.

135. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Product.

136. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

137. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Material Omission and the Challenged Representations in deciding to purchase the Products. The Material Omission and Challenged Representations were a substantial factor. The Material Omission and Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

138.  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

139.  By a letter dated December 31, 2024, Plaintiff advised Defendant of its false and misleading representations and omissions pursuant to California Civil Code Section 1782(a).

140.  Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claims challenged herein. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant. Plaintiff shall be irreparably harmed if such an order is not granted.

141.  Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

142.  Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

143.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively market the Products as being safe and suitable for everyday wear. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent

CLASS ACTION COMPLAINT

future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, remanufacturing the Products so they do not contain PFAS or removing the Challenged Representations. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the Products), rendering injunctive relief a necessary remedy.

## COUNT FOUR

### Fraud

### (*on behalf of the Nationwide Class*)

144. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, as though fully set forth herein.

145. Plaintiff brings this claim individually and on behalf of the Class under California law.

146. At the time Plaintiff and Class Members purchased the Products, Defendant did not disclose, but instead concealed and misrepresented, the Products sustainable, safe, and suitable for human use.

147. **Who, What, When, Where, and How:** Since at least 2019 (when), Defendant (who) has used fluoroelastomer material for their watchbands. In 2023 (when), Plaintiff Gonzalez was misled into buying Defendant's Galaxy Watch 6

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

44mm, which comes with the fluoroelastomer Sport Band (what), in a Sam's Club in El Monte, California (where). Defendant affirmatively misrepresented the Products, marketing the Products as sustainable, safe, and suitable for human use, including prolonged daily wear, and Plaintiff relied upon Defendant's Challenged Representations and Material Omissions described *supra* ¶¶ 9-13 (what/how). Defendant made the Challenged Representations throughout their pervasive and widespread marketing scheme, including their official website (https://www.samsung.com/us) and product pages (see *supra* notes 10-14, 31-36) (what/where).

148.  Defendant also knew that its omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's representations (and corresponding omissions) in making purchasing decisions.

149.  Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

150.  Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

151.  Plaintiff and Class Members had a right to reply upon Defendant's representations (and corresponding omissions) as Defendant maintained monopolistic control over knowledge of the true quality of the Products.

152.  Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions and misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

///

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## **COUNT FIVE**

### **Fraudulent Inducement**

### (*on behalf of the Nationwide Class*)

153.  Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

154.  Plaintiff brings this claim individually and on behalf of the Class under California law.

155.  Defendant did not disclose, but instead concealed and misrepresented, the Products as discussed herein.

156.  Plaintiff Gonzalez was misled into buying Defendant's Galaxy Watch 6 44mm, which comes with the fluoroelastomer Sport Band, at a Sam's Club in El Monte, California. Defendant affirmatively misrepresented the Products, marketing the Products as sustainable, safe, and suitable for human use, including prolonged daily wear, and Plaintiff relied upon Defendant's Challenged Representations and Material Omissions described *supra* ¶¶ 9-13. Defendant made the Challenged Representations throughout their pervasive and widespread marketing scheme, including their official website (https://www.samsung.com/us) and product pages (see *supra* notes 10-14, 31-36). Plaintiff was induced to purchase the Purchased Product under the guise of the Products supporting health, wellness, and fitness. Plaintiff sought the Product for health support purposes, including heart rate monitoring and tracking sleep patterns and other data.

157.  Defendant knew, or should have known, that the Products were falsely portrayed and that knowledge of the safety-related issues discussed throughout was withheld from the consumer public.

158.  Defendant also knew that omissions and misrepresentations regarding the Product were material, and that a reasonable consumer would rely on Defendant's

**CLASS ACTION COMPLAINT**

representations (and corresponding omissions) in making purchasing decision.

159. Plaintiff and Class members did not know—nor could they have known through reasonable diligence—about the true quality of the Products.

160. Plaintiff and Class members were reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

161. Plaintiff and Class members had a right to rely on Defendant's representations (and corresponding omissions) as Defendant maintained a monopolistic control over the Products, and what information was available regarding the Products.

162. Defendant intended to induce—and did, indeed, induce—Plaintiff and Class members into purchasing the Products based upon their affirmative representations and omissions.

163. Plaintiff and Class members sustained damages as a result of their reliance on Defendant's omission and misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT SIX

### Fraudulent Concealment or Omission
### (*on behalf of the Nationwide Class*)

164. Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

165. Plaintiff brings this claim individually and on behalf of the Class under California law.

166. At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

167. Defendant, acting through its representatives or agents, delivered the Products to its own distributors and various other distribution channels.

168. Defendant willfully, falsely, and knowingly omitted material facts and made partial representations regarding the quality and character of the Products as discussed throughout.

169. Rather than inform consumers of the truth regarding the Products, Defendant misrepresented the quality of the Products as discussed herein at the time of purchase.

170. Defendant made these material omissions and partial representations to boost or maintain sales of the Products, and to falsely assure purchasers of the Products that Defendant is a reputable company and that its Products are safe and suitable for human use. The omitted information and partial representations were material to consumers because the representations played a significant role in the value of the Products purchased.

171. Plaintiff and Class members accepted the terms of use, which were silent on the true nature of the Products, as discussed throughout. Plaintiff and Class members had no way of knowing that Defendant's misrepresentations as to the Products and had no way of knowing that Defendant's misrepresentations were misleading.

172. Although Defendant had a duty to ensure the accuracy of the information regarding the Products because they were in exclusive knowledge of this information, Defendant did not fulfill that duty.

173. Defendant misrepresented material facts to protect their profits, which came at the expense of Plaintiff and Class members.

174. Plaintiff and Class members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth. Plaintiff's and Class members' actions were justified given Defendant's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

misrepresentations.

175. Defendant was in the exclusive control of material facts, and such facts were not known to the public.

176. Due to Defendant's misrepresentations, Plaintiff and Class members sustained injury due to the purchase of the Products that did not live up to their advertised representations. Plaintiff and Class members are entitled to recover full refunds for the Products they purchased due to Defendant's misrepresentations.

177. Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff, and Class members' rights and well-being, and in part to enrich themselves at the expense of consumers. Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competing products. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT SEVEN

### Fraudulent Misrepresentation

### (*on behalf of the Nationwide Class*)

178. Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

179. Plaintiff brings this claim individually and on behalf of the Class under California law.

180. Defendant falsely represented to Plaintiff and the Class that the Products were safe and suitable for human use.

181. Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase the Products.

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

182. Defendant knew or should have known that their representations about the Products were false in that the Products are not safe or suitable for human use as discussed throughout. Defendant knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

183. Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Defendant advertised, marketed, represented, and otherwise promoted the Products, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

184. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products at all had they known of the safety risks associated with the Products and that they do not conform to Defendant's advertising and marketing.

185. Plaintiff and the Class seek actual damages, attorney's fees, costs, and other such relief the Court deems proper.

## COUNT EIGHT

### Negligent Misrepresentation

### (*on behalf of the Nationwide Class*)

186. Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

187. Plaintiff brings this claim individually and on behalf of the Class under California law.

188. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

189. Defendant breached its duty to Plaintiff and the Class by developing, testing, manufacturing, marketing, detailing, distributing, and selling the Products to Plaintiff and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Defendant and by failing to promptly remove the Products from the marketplace or take other appropriate remedial action.

190. Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for its intended use and were otherwise not as warranted and represented by Defendant.  Specifically, Defendant knew or should have known that the Product was not safe or suitable for human use, and raised health risks.

191.  As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products at all had they known that the Products were not safe or suitable for human use and that the Products do not conform to the Product's marketing, advertising, or statements.

192.  Plaintiff and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## COUNT NINE

### Quasi-Contract / Unjust Enrichment
### (*on behalf of the Nationwide Class*)

193.  Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs ¶¶ 1-24, 28-31, 32-76, and 147, as though fully set forth herein.

194.  Plaintiff brings this claim individually and on behalf of the Class under California law.

195.  To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

CLASS ACTION COMPLAINT

196. Plaintiff and Class members conferred monetary benefits on Defendant by purchasing the Products. Defendant's profits are funded entirely from their generated revenues – payments made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendant's Challenged Representations and Omissions.

197. Defendant knew that Plaintiff and the Class conferred a benefit which Defendant accepted, and through which, Defendant was unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that contrary to its representations, the Products were not safe for everyday wear and instead contained harmful toxic chemicals like PFAS, which pose serious harm to human health and environment. Defendant's conduct, representations, and omissions caused injuries to Plaintiff and Class members because they would not have purchased the Product if the true facts were known.

198. Defendant enriched itself by saving the costs they reasonably should have spent on ensuring that the Products are free from toxic chemical substances like PFAS, and conform with their advertised representations.

199. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## VIII.    **PRAYER FOR RELIEF**

200. **WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

    a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

CLASS ACTION COMPLAINT

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

h.  **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

DATED: December 31, 2024                    Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**


*/s/ Yana Hart*
Ryan Clarkson, Esq.
Yana Hart, Esq.
Mark Richards, Esq.
Tiara Avaness, Esq.

CLASS ACTION COMPLAINT